# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

UNITED STATES of AMERICA

v.                                                              Criminal No. 20-CR-10308-1

LAJERRAN LONG,

     Defendant.

## SENTENCING MEMORANDUM ON BEHALF OF
## DEFENDANT LAJERRAN LONG

Defendant Lajerran Long respectfully submits this memorandum and accompanying letters of support to assist the Court with sentencing.

## I.    Preliminary Statement

Lajerran Long ("LJ", as he is known to his friends and family) is a young man continually seeking to better his life and the lives of those around him. Mr. Long was raised in a public housing project in Malden by his single-mother, Delores Ann Long. Delores Ann worked hard to support her son and raise him in a good home. Mr. Long was also fortunate to have a close relationship with his maternal grandmother, Delores Long, before she passed away under tragic circumstances. He has long felt a responsibility to help his mother and grandmother, and his commitment to his mother continues to this day. Mr. Long has maintained steady employment since leaving high school to ensure that he and his mom can maintain a modest but steady life in their Malden home.

Outside his home, Mr. Long has from a young age sought to make positive contributions to his community. As an adolescent, he was a successful student-athlete and participated in the

Malden Mayor's Summer Youth Employment Program, mentoring local children.  And the letters of support submitted herewith (as Exhibit A) demonstrate that the poor choice that led to Mr. Long's involvement in this matter was an aberration, not a true reflection of his character.

But true to that character, Mr. Long fully accepts responsibility for his actions.  Not only is he remorseful, he is embarrassed.  Mr. Long understands that no matter how small a role he played here, nothing excuses the decision he made—a decision for which he now faces serious consequences.  Among other things, despite passing a civil service examination last year, his lifelong dream to be a police officer is now in grave jeopardy.

In fashioning a just sentence here, Mr. Long urges the Court to consider his conduct within the appropriate context of his life and character.  For the reasons explained below, Mr. Long respectfully suggests that the Court impose a slightly variant sentence of time served to be followed by a three-year period of supervised release, including a term of home confinement, which would allow Mr. Long to continue to work, support his mother, and maintain their home. Such a sentence in this case is sufficient but not greater than necessary to meet the aims of sentencing.

## II.   **Factual Background**

### A.   **Mr. Long's Early Life and Maternal Upbringing**

Mr. Long grew up in a housing project in Malden, Massachusetts.  He had many friends in the neighborhood with whom he bonded over sports.  This love for sports continued throughout his youth, playing competitively in high school.

Mr. Long's father was not a part of his life as a child.  Although Mr. Long's maternal uncles served as father figures, he was primarily raised by his mother, Delores Ann Long, and grandmother, Delores Long.

Led by these two women, Mr. Long managed to have a good support system growing up. Delores Ann worked hard to ensure he had a home and food on the table.  If she ever found herself without work, she would find a new position quickly.  Mr. Long also spent considerable time with his grandmother, who lived alone nearby.  Not only did Mr. Long help his grandmother around the house, she was his best friend.

**B.      The Death of Mr. Long's Grandmother**

One night while he was sleeping at his grandmother's house, Mr. Long awoke to discover that the home was engulfed in flames.  He immediately began searching for his grandmother, following her screams.  He burst into her room and discovered that she was on fire.  Setting his own safety aside, Mr. Long rushed to extinguish the flames covering his grandmother and was able to get her out of the house.  He suffered burns, but his grandmother's burns were severe. Unfortunately, although he had succeeded in saving her temporarily, Mr. Long's grandmother succumbed to her injuries and passed away after several days in the ICU.

Upon losing his best friend and the family matriarch, Mr. Long's extended family spent less time together.  Delores Ann had a difficult time following the loss, which was intensified six months later when her father, Mr. Long's grandfather, suffered a heart attack and subsequently passed within a year.  Still, Delores Ann persevered and continued to work to support her son. Mr. Long reciprocated this support and became his mother's "rock."

Mr. Long felt a piece of him was missing—like he had a hole in his chest.  He had difficulty expressing his grief, but he persevered.  Despite experiencing discrimination throughout his high school career, he walked nearly an hour each day to get to school.  Mr. Long was a student athlete who worked hard inside and outside the classroom.  He also participated in the Mayor's Summer Youth Employment Program, through which Mr. Long worked for the Malden Housing Authority, taught children basketball for the Malden Recreation Department,

and handed out school lunches.  He built relationships, both with the program counselors and the kids he mentored, which continue today.

### C.     Mr. Long's Life After High School

After high school, Mr. Long kept working to help support his mother in recognition of her years of devotion to his well-being.  He continues to feel the spirit of his grandmother and looks back at her death as a reminder to try his best to enjoy life by engaging in things that bring him joy, like being around family and playing basketball.  He learned to forgive his father and, although they are not particularly close, Mr. Long made the effort to reconnect with him. Several years ago, Mr. Long also learned that he has two paternal siblings, and he was able to meet them for the first time.  This experience was exhilarating and helped Mr. Long open his heart and mind.  Along with his mother, Mr. Long's siblings have become a vital support system who regularly check in on him.

Mr. Long has worked hard and steadily since high school, including serving managerial roles at retail stores and as a ramp agent for Delta Airlines.  Although these have been good jobs that have helped support himself and his mother, Mr. Long always wanted to become a police officer.  When he was young, he saw the important role police officers played as a friendly presence in the housing projects in which he grew up.  He grew to admire the profession and the unique ability police officers have to make positive impacts on youth in the neighborhood.  Mr. Long even views some officers as family.  This admiration made being a police officer a lifelong dream.

Mr. Long took the civil service exam to fulfill this dream, receiving notice that he had passed last year.  Unfortunately, the conduct at issue here has undermined his career goal, but the poor decision he made—for which not one day passes without regret—does not define him.  Mr. Long has accepted responsibility for his actions and he has accepted that he must move on.  Mr.

Long enjoys his current job at Nike and is now looking forward, planning to put this matter behind him and focus on the positives in his life.

Mr. Long knows that his mother is disappointed in the choices he has made, but no one is more disappointed than Mr. Long is himself. He knows that he has not only jeopardized his own future, but the way of life on which his mother has come to rely. And yet, she still stands by him. He knows he must do better, and he is committed to doing that.

III. **Mr. Long and the Government Agree on the Proper Application of the Sentencing Guidelines**

Mr. Long fully accepted responsibility for his conduct and agreed to waive indictment and plead guilty to conspiracy to commit bank fraud. As the plea agreement reflects, Mr. Long and the government agree that the total offense level under the sentencing guidelines is 13, with a criminal history that results in a guideline imprisonment range within "Zone C" of the Sentencing Table.

A. **Mr. Long and the Government Agree that no more than a 12-Level Loss Enhancement Applies**

Mr. Long and the government agree that the base offense level should be increased by no more than 12 levels, pursuant to USSG §2B1.1(b)(1)(I).

As the government has explained, the amount of money that Mr. Josaphat took from the bank—the actual loss—was $357,333, and Mr. Josaphat intended to take another $457,992. "Loss" for purposes of §2B1.1(b) is calculated as the greater of intended loss or actual loss, but as to Mr. Long, the government agrees that the intended loss is too speculative and was not "reasonably foreseeable" to him. Mr. Long, who was not the leader of this scheme, had no control over the amounts of the fraudulent withdrawals from the victim's bank accounts, which the government concedes were carried out by others.

5

The Court must make an "individualized determination regarding the loss attributable to, or reasonably foreseeable by" a defendant. *United States v. Pizarro–Berrios*, 448 F.3d 1, 7 (1st Cir. 2006). This inquiry requires the Court to "ascertain what activity fell within the scope of the specific conduct and objectives embraced by the defendant's agreement, and then determine to what extent others' acts and omissions that were in furtherance of jointly undertaken criminal activity likely would have been foreseeable by a reasonable person in defendant's shoes at the time of his or her agreement." *United States v. Delima*, 886 F.3d 64, 73 (1st Cir. 2018) (internal quotations omitted). Unlike the defendant in *Delima*, however, Mr. Long was not an "integral member" of the conspiracy and, at a minimum, the scope of the taking Mr. Josaphat intended was not reasonably foreseeable to Mr. Long. In sum, the full amount of the intended loss was not "reasonably foreseeable in connection with that criminal activity." USSG §1B1.3(a)(1)(B). Thus, the offense level should be increased by no more than 12 levels. USSG §2B1.1(b)(1)(G).

**B.      Mr. Long and the Government Agree that the Offense Level Should Be Decreased by Three Levels for Mr. Long's Reduced Role**

Mr. Long and the government agree that Mr. Long's role in the scheme entitles him to a three-level reduction in offense level, pursuant to USSG §3B1.2. Although Mr. Long accepts responsibility for his actions, he is substantially less culpable than the other members of the conspiracy led by Mr. Josaphat. First, there is no evidence that Mr. Long understood the vast scope and structure of Mr. Josaphat's scheme. Second, Mr. Long played no role in planning or organizing the criminal activity. Third, he played no role in deciding what, where, how, or when the criminal activity would proceed. Fourth, he played no role in any of the activities that occurred at the bank, including no involvement in any withdrawals, false representations, use of any fraudulent identification documents, or the resulting fraudulent transfers of funds. Finally,

6

the degree to which Mr. Long stood to benefit from the criminal activity was minimal.  Thus,

Mr. Long and the government agree that his limited role warrants the three-level reduction.

Accordingly, the government and Mr. Long agree that the total offense level under the

sentencing guidelines is 13, which places Mr. Long—who has no criminal history points—in

"Zone C" of the Sentencing Table.  As such, the Guidelines authorize a "split" sentence of six

months in prison and six months in home or community confinement, which is the government's

recommendation.

As discussed below, however, Mr. Long respectfully suggests that a small downward

variance from the sentencing guidelines is more appropriate here based on application of the

factors in 18 U.S.C. § 3553.

**IV.** **Mr. Long's Proposed Sentence is Sufficient but Not Greater than Necessary to Satisfy the Factors Set Forth in 18 U.S.C. § 3553**

Although a Court must consider the Sentencing Guidelines when fashioning a just

sentence, they constitute a starting benchmark, not a requirement.  18 U.S.C. § 3553 provides

that the court "shall impose a sentence sufficient, but not greater than necessary, to comply with

the purposes set forth in paragraph (2)," which are "the need for the sentence imposed—

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."

18 U.S.C. § 3553(a)(2); *see also United States v. Booker*, 543 U.S. 220, 258-60 (2005).  The

Court must also consider the history and characteristics of the defendant, the nature and

circumstances of the offense, the kinds of sentences available, the need to avoid unwarranted

sentence disparities among defendants, and the need to provide restitution to any victims.  18

U.S.C. § 3553(a)(1)-(7).  Keeping all of these factors in mind, the Court must make an

"individualized assessment" in imposing a sentence. *See Gall v. United States*, 522 U.S. 38, 50 (2007).

Mr. Long respectfully submits that a sentence of time served, to be followed by a term of supervised release that includes a period of home confinement, is the just outcome here and constitutes a sentence that is sufficient but not greater than necessary to achieve the sentencing purposes of Section 3553(a).

### A.     The Nature and Circumstances of Mr. Long's Offense Must Be Viewed in the Proper Context

Mr. Long's offense was serious and he has accepted responsibility for his actions, but the limited role that he played provides critical context for the Court to consider when weighing the appropriate statutory factors.

Mr. Long's role was limited to introducing CW-1 to Mr. Josaphat and facilitating a single payment of approximately $2,000 to CW-1, as he was directed by Mr. Josaphat.  As discussed above, it was Mr. Josaphat, not Mr. Long, who contacted CW-1 directly, explained how the scheme would work, and then coordinated the criminal activities, including the activities of the other players in the scheme.  It was Mr. Josaphat and others, not Mr. Long, who made false representations, used fraudulent identification documents, and caused the fraudulent withdrawals and fund transfers.

Moreover, the government agrees that that Mr. Long did not understand the vast scope and structure of Mr. Josephat's scheme.  Indeed, when Mr. Long was confronted during his post-arrest interview about the amount of money that Mr. Josaphat and others had taken from the bank, the government agrees that Mr. Long expressed genuine shock and surprise that the amount was so large.  Mr. Josaphat had provided Mr. Long with only $5,000, which amounted to

less than 2% of what Mr. Josaphat took and less than 1% of what Mr. Josaphat apparently intended to take.

And yet, despite the disconnect between his conduct and the amount of money Mr. Josaphat took, Mr. Long's offense level under the Sentencing Guidelines is driven in large part by the loss enhancement as a simple matter of math. As a result, this is a classic case of the loss—as applied—overstating the seriousness of the specific offensive conduct. *See, e.g.*, *United States v. Gupta*, 904 F. Supp. 2d 349, 351 (S.D.N.Y. 2012) (explaining that because the sentencing guidelines in fraud cases "focus largely on a single factor as the basis for enhanced punishment: the amount of monetary loss or gain occasioned by the offense," guideline sentences in fraud cases are often "irrational on their face" because they fail to account for the many factors that §3553 requires a court to consider). One court has said the following about sentencing a defendant in a fraud case:

> [The defendant's sentencing] shows how the fraud guideline, despite its excessive complexity, still does not account for many of the myriad factors that are properly considered in fashioning just sentences, and indeed no workable guideline could ever do so. This reality does not render the Guidelines irrelevant in fraud cases; they are in fact quite useful in all sentencings. But sentencing judges know that a full consideration of "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1), implicates offense and offender characteristics that are too numerous and varied, and occur in too many different combinations, to be captured, much less quantified, in the Commission's Guidelines Manual. A consideration of those and the other factors set forth in § 3553(a) produces sentences that are moored to fairness, and to the goals of sentencing set forth in § 3553(a)(2), but sometimes not so much to the advisory Guidelines range. Indeed, in some cases the fair sentence can drift quite far away from the advisory range, which is, after all, but one of eight factors the sentencing judge must consider.

*United States v. Ovid*, No. 09-CR-216 (JG), 2010 WL 3940724, at *1 (E.D.N.Y Oct. 1, 2010).

Courts in this district agree. *See, e.g.*, *United States v. Costello*, 16 F. Supp. 2d 36, 40 (D. Mass. 1998) (concluding that a downward departure is warranted because the "loss figure substantially overstates defendants' culpability" where defendant received less than 1% of the value of the

goods stolen); *United States v. Mueffelman*, 400 F. Supp. 2d 368, 378-379 (D. Mass. 2005) (departing from the guideline sentence because "issues concerning the blameworthiness of a defendant found guilty of fraud are more complex than simply measuring the amount of the loss"), *aff'd*, 470 F.3d 33 (1st Cir. 2006).  While Mr. Long acknowledges and deeply regrets the seriousness of his conduct, the loss value here substantially overstates his culpability.  For a sentence that is sufficient but not greater than necessary, the Court must place Mr. Long's conduct in context.

As described above, Mr. Long was on the periphery of this scheme and participated only to the extent that he introduced CW-1 to Mr. Josaphat and facilitated a payment to CW-1 at Mr. Josaphat's direction.  Mr. Long played no role in planning or organizing the activity that occurred in the bank, and the government acknowledges that he did not understand the scope or structure of Mr. Josaphat's scheme.  Such context is essential in weighing a just outcome here.

### B.    Mr. Long's Poor Choice Does Not Define Him

This Court must also consider the characteristics of the defendant in determining an appropriate sentence.  18 U.S.C. § 3553(a)(1).  Mr. Long's decision to try to make some easy money was the worst one he has ever made, but the Court should view it for what it was:  a terrible aberration in a life rich with good choices.  Mr. Long also chose selflessly to rush toward the flames and rescue his grandmother during that tragic housefire.  Mr. Long also chose to mentor local children through the Mayor's Summer Youth Employment Program, forming bonds that continue today.  Mr. Long also chose to maintain steady employment and support his mother, both financially and emotionally, as she had done for him as a single mother struggling to stay afloat.

Mr. Long's letters of support filed herewith also corroborate his high character, noting among other things, that he is:

10

- An "honest, hard-working, family-oriented young man"

- "[O]ne of the hardest working persons I know"

- "[A]lways willing to help the next person advance"

- "Strong and selfless"

- "A true man of integrity, inspiration, and hard work ethic"

Such strength of character supports a downward variance from the guideline sentence. *See, e.g.*, *United States v. Mehta*, 307 F. Supp. 2d 270, 277 (D. Mass. 2004) (holding that a court's "focus should be on the defendant's activities, understood in the light of his career and resources, particularly those that go beyond the kind of 'impersonal writing of checks'").

Similarly, with respect to considering the need for specific deterrence, the Court need not worry here that Mr. Long will reoffend. Mr. Long's deep remorse and embarrassment flow directly from the shame of making a choice that is so out of character. His involvement in this matter and corresponding conviction have already caused significant stress on his family, especially his mother. In addition, through his conduct, he has essentially forfeited a chance to fulfill his life-long dream to become a police officer, undercutting his impressive accomplishment in passing the civil service examination. And yet, he understands that he must keep working hard and move on from this aberrant episode of his otherwise law-abiding life. He is committed to doing so.

Nonetheless, Mr. Long understands that his actions have consequences. Given that the Court must consider alternatives to imprisonment when weighing the appropriate sentence, Mr. Long urges the Court to impose a sentence of time served, plus a three-year term of supervised release that includes an appropriate period of home confinement. Imposing a period of home

11

confinement would help the Court meet the goals of sentencing, while still allowing Mr. Long to provide support for his mother, who relies on him for financial, emotional, and other support.

### C.    Mr. Long Has Agreed to Forfeiture but Restitution Should be Apportioned

Having already agreed to forfeit the $5,000 he received, which was a tiny fraction of the amount Mr. Josaphat took, Mr. Long respectfully requests that the Court consider apportioning restitution commensurate with his limited role.  A sentencing court "may apportion liability among the defendants to reflect the level of contribution to the victim's loss and economic circumstances of each defendant."  18 U.S.C. § 3664(h); *see also United States v. Salas-Fernandez*, 620 F.3d 45, 48 (1st Cir. 2010) (ordering defendant to pay restitution equal to one-sixth of the total loss where there were six known participants in the robbery); *United States v. Scott*, 270 F.3d 30, 52 (1st Cir. 2001) (affirming district court's restitution apportionment in which two individuals were liable for substantially less based on their individual culpability in the fraud); *United States v. Babich*, No. 16-CR-10343-ADB, 2020 WL 1235536, at *9 (D. Mass. Mar. 13, 2020), *aff'd in part, vacated in part, remanded sub nom. United States v. Simon*, No. 20-1368, 2021 WL 3754239 (1st Cir. Aug. 25, 2021).  In *Babich*, the court limited the restitution for four individuals, while "the three principally responsible for the scheme" were jointly and severally liable for the total restitution.  *Babich*, 2020 WL 1235536, at *10.  Here, as described above, Mr. Long only received a small fraction of the $357,333 lost, corresponding to his peripheral role in the scheme.  A fair apportionment of restitution would reflect his significantly lower contribution to the loss.

Mr. Long understands, however, that neither Mr. Josaphat nor his other accomplices are before the Court in this matter.  Faced with a similar situation, the *Babich* court indicated that the corporate defendant, which was being tried separately, could later be apportioned liability for the restitution, if the trying court decided it was appropriate.  *Babich*, 2020 WL 1235536, at *9.  If

the Court is not inclined to order that restitution be apportioned at this time, Mr. Long requests the Court make a similar recommendation here.

## Conclusion

In short, each of the factors of the sentencing statute supports the sentence that Mr. Long respectfully urges this Court to impose.  It is a sentence that is sufficient to match the seriousness of the offense and to serve as a deterrent, but also one that will not be greater than necessary to accomplish the goals of sentencing and one that will not unduly punish him or those that rely on him.  Mr. Long has fully accepted responsibility for his conduct, agreeing to plead guilty even prior to indictment.  He deeply regrets the harm that he has caused—not only to those defrauded—but also to his family, his friends, and his community.  He is working diligently to better himself, and he looks forward to contributing to his family and community as the hard-working son, brother, and citizen that he was and wants to be.

Therefore, for the reasons stated herein, Mr. Long respectfully submits that a term of time served to be followed by a period of supervised release for three years, including a period of home confinement to allow Mr. Long to work and continue to support his mother, and forfeiture as agreed, is sufficient but not greater than necessary to meet the aims of sentencing.

Respectfully submitted,

*/s/ Eric P. Christofferson*
Eric P. Christofferson (BBO#654087)
DLA PIPER LLP (US)
33 Arch Street, 26th Floor
Boston, MA 02110-1447
eric.christofferson@dlapiper.com
Tel. (617) 406-6000
Fax (617) 406-6100

ATTORNEY FOR LAJERRAN LONG

Dated: October 5, 2021

13

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document (filed through the ECF system) will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as nonregistered participants.

*/s/ Eric P. Christofferson*

Eric P. Christofferson

Dated: October 5, 2021